# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **J.S., J.P., and T.S.**, by their parent and natural guardian, **TONIQUE PROCTOR**, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>**ORACLE CORPORATION**,<br><br>       Defendant. | Case No. ___1:25-cv-01939___<br><br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs J.S., J.P., and T.S., minors, by their parent and natural guardian, Tonique Proctor ("Plaintiffs"), through their attorneys, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Oracle Corporation ("Oracle" or "Defendant"). Oracle acquired Cerner in 2022 and now owns, controls, manages, and operates the Cerner electronic health record ("EHR") systems used by Children's National Hospital to store and process sensitive patient information. Plaintiffs allege the following on information and belief—except as to their own actions, counsel's investigation, and matters of public record.

## INTRODUCTION

1.  This class action arises from Defendant Oracle Corporation's ("Oracle") failure to safeguard the highly sensitive personal and medical information entrusted to its systems.

2.  As used herein, "Private Information" includes personally identifiable information ("PII") and protected health information ("PHI"), such as names, addresses, dates of birth, Social

Security numbers, medical record numbers, treatment information, diagnoses, laboratory results, provider notes, images, medications, and other sensitive medical or identifying data entrusted to Children's National and stored by Oracle.

3.      Oracle is a multinational technology and enterprise software company headquartered in Austin, Texas. Oracle provides electronic health record ("EHR") hosting, data-storage, and related information-technology services to healthcare institutions throughout the United States, including Children's National Hospital.[1]

4.      Oracle maintained, stored, and controlled the Private Information at issue in this case within its own systems. The Data Breach giving rise to this action occurred entirely within Oracle's environment, not within the systems of Children's National or any other third-party entity.

5.      As such, Oracle stores large volumes of highly sensitive PII and PHI for patients and families served by Children's National Hospital. This includes, upon information and belief, names, dates of birth, addresses, Social Security numbers, medical record numbers, diagnoses, treatment information, laboratory results, images, medications, and other confidential medical data.

6.      But this highly sensitive information was inadequately protected and was thereby exposed to cybercriminals in a data breach (the "Data Breach").

7.      It is unknown precisely how long cybercriminals had access to Oracle's systems before the breach was discovered. In other words, Oracle lacked effective means to prevent, detect, stop, or mitigate unauthorized access to its systems—allowing cybercriminals prolonged and unrestricted access to Plaintiffs' and the Class's Private Information.

---

[1] *About Oracle*, Oracle, https://www.oracle.com/corporate/ (last visited Nov. 25, 2025).

8.      Upon information and belief, cybercriminals were able to breach Oracle's systems because Oracle failed to implement reasonable and industry-standard cybersecurity safeguards, failed to adequately monitor its network, and failed to maintain sufficient protocols to secure the Class's Private Information. In short, Oracle's failures placed Plaintiffs' and the Class's Private Information in a dangerously vulnerable position, rendering them easy targets for cybercriminals.

9.      Plaintiffs are Data Breach victims. They bring this class action on behalf of themselves and all others harmed by Oracle's misconduct.

10.      The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this Data Breach, Plaintiffs' and the Class's sensitive information was exactly that—private. Not anymore. Their most personal data is now exposed, unsecure, and permanently at risk.

## PARTIES

11.      Plaintiffs J.S., J.P., and T.S. are natural persons and citizens of the District of Columbia. As minors, they bring this action through their parent and natural guardian, Tonique Proctor, who is domiciled in the District of Columbia (where she intends to remain). Each Plaintiff received a notice of breach dated October 29, 2025.

12.      Defendant Oracle Corporation ("Oracle") is a stock corporation incorporated under the laws of the State of Delaware, with its principal place of business located at 2300 Oracle Way, Austin, Texas 78741. Oracle may be served through its registered agent for service of process: Corporation Service Company d/b/a CSC–Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one Plaintiff is a citizen of a different state than at least one Defendant. And there are over 100 putative Class Members. Defendant Oracle Corporation is a citizen of Texas.

14.     This Court has personal jurisdiction over Defendant because Oracle Corporation is headquartered and has its principal place of business in the Austin Division of the Western District of Texas and Defendant regularly conducts business in Texas and has sufficient minimum contacts in Texas.

15.     Venue is proper in the Austin Division of the Western District of Texas because Oracle's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### Oracle Collected and Stored the PII of Plaintiffs and the Class

16.     Defendant Oracle Corporation ("Oracle") is a multinational technology and enterprise software firm that provides electronic health record ("EHR") hosting, data-storage, and related information-technology services to healthcare institutions throughout the United States.[2]

17.     As part of its EHR and data-hosting services, Oracle receives, stores, maintains, processes, and transmits the sensitive personally identifiable information ("PII") and protected health information ("PHI") of patients treated at institutions that use Oracle's platforms, including Children's National Hospital.

---

[2] FN 1, supra.

18.    In providing these services, Oracle requires healthcare providers, including Children's National, to transmit and store within Oracle's systems large volumes of patient PII and PHI—often including names, addresses, dates of birth, Social Security numbers, medical record numbers, diagnoses, treatment information, medications, laboratory results, images, and other highly confidential medical data.[3]

19.    Oracle maintained and controlled the Private Information of Plaintiffs and the Class in its own environments, databases, and servers. Oracle, not Children's National or any other third party, was responsible for safeguarding the Private Information once it was transmitted to and stored on Oracle's systems.

20.    Oracle expressly and implicitly agreed—through its role as a Business Associate, its contractual obligations, its internal policies, state law, and federal law—that it would secure and safeguard Plaintiffs' and Class Members' Private Information.

21.    Plaintiffs and Class Members reasonably expected that Oracle would employ industry-standard and legally required safeguards to protect their Private Information from unauthorized access, acquisition, or disclosure. Plaintiffs and Class Members themselves took reasonable steps to secure their information and had no ability to control Oracle's inadequate cybersecurity practices.

22.    Under state and federal law—including HIPAA, HITECH, state data-breach notification statutes, and common-law duties of reasonable care—businesses like Oracle have affirmative obligations to safeguard the PII and PHI they maintain and to provide timely and accurate notice of any breach compromising that information.

---

[3] *Id.*

23.    Oracle publicly acknowledges these duties. In its Customer Data Privacy Policy, Oracle states[4]:

• *"Oracle has implemented and will maintain technical and organizational measures designed to prevent accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to Services Personal Information. These measures… are aligned with the ISO/IEC 27001:2013 standard."*

• *"Oracle employees are required to maintain the confidentiality of personal information. Employees' obligations include written confidentiality agreements, regular training, and compliance with company information-protection policies."*

• *"We do not share or sell personal information subject to this Privacy Policy with third parties for any commercial purposes."*

• *"If personal information is transferred to an Oracle recipient in a country that does not provide an adequate level of protection… Oracle will take adequate measures designed to protect the personal information, such as ensuring such transfers are subject to EU Model Clauses or other adequate transfer mechanisms."*

24.    Through these statements, Oracle affirmatively represents that it: (a) implements and maintains industry-standard security measures; (b) requires its employees to safeguard confidentiality; (c) does not improperly disclose personal information; and (d) ensures adequate security protections whenever personal information is transmitted or stored. Plaintiffs and Class Members reasonably relied on these representations, and Oracle's failure to honor them is a core part of the misconduct at issue in this case.

---

[4] *Privacy Policies*, ORACLE, https://www.oracle.com/legal/privacy/customer-data-research-development-privacy-policy/#9 (last visited Nov. 25, 2025)

*Oracle's Data Breach*

25.    On July 10, 2025, Oracle was hacked in the Data Breach—which compromised the data of its enterprise consumers. [5]

26.    In particular, the notorious cybercriminal syndicate "CL0P" gained access to the PII of Plaintiffs and Class Members.[6]

27.    Specifically, Cl0p "exploited what may be CVE-2025-61882 as a zero-day vulnerability against Oracle EBS customers on Aug. 9, 2025 . . . with additional suspicious activity dating back to July 10, 2025" and "the threat actor successfully exfiltrated a significant amount of data from impacted organizations."[7]

28.    Despite the Data Breach unfolding weeks ago, Oracle has made no meaningful effort to notify Plaintiffs or the Class that their sensitive information was compromised.

29.    By keeping Plaintiffs and Class Members in the dark, Oracle deprived them of the ability to take timely steps to mitigate the harm—such as monitoring accounts, placing fraud alerts, freezing credit, or otherwise protecting themselves and their children.

30.    Oracle failed its duties when its inadequate security practices allowed cybercriminals to infiltrate its systems and exfiltrate the Private Information of Plaintiffs and the Class. Oracle's negligence is demonstrated by its failure to prevent the Data Breach, detect it promptly, or stop cybercriminals from accessing and stealing the data. As a direct result, Plaintiffs and Class Members suffered widespread injury and monetary damages.

---

[5] *Data Breach Notification*, MAINE ATTY GEN (Nov. 25, 2025)
https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-
a1252b4f8318/a69e0001-a0f8-46d9-a49d-cb01159afec2.html.
[6] *Oracle E-Business Suite Zero-Day Exploited in Widespread Extortion Campaign*, GOOGLE
CLOUD (Oct. 9, 2025) https://cloud.google.com/blog/topics/threat-intelligence/oracle-ebusiness-
suite-zero-day-exploitation.
[7] *Id.*

31.     Oracle has taken no meaningful steps to remedy the Data Breach or to protect Plaintiffs and the Class from ongoing misuse of their stolen information.

32.     Because of Oracle's failures, the sensitive PII and PHI of Plaintiffs and Class Members was placed directly into the hands of cybercriminals, inflicting numerous injuries and causing significant, continuing damages.

33.     Public evidence demonstrates that cybercriminals have already begun trafficking the stolen information. Yet Oracle still has not provided adequate notice, mitigation, or remediation.

34.     On information and belief, Plaintiffs' and the Class's stolen Private Information has already been published—or will imminently be published—by the CL0P ransomware group on the dark web, where it may be bought, sold, and exploited indefinitely.

### *Plaintiff J.S.'s Experiences*

35.     Plaintiff J.S. is a minor and a Data Breach victim. Her sensitive PII and PHI were stored within Oracle's systems because she received medical services at Children's National Hospital, which relies on Oracle's EHR and data-hosting services.

36.     Oracle obtained and maintained J.S.'s Private Information as part of its role hosting and storing Children's National's patient data.

37.     As a direct result of Oracle's Data Breach, J.S.'s highly sensitive Private Information was exposed to cybercriminals.

38.     J.S.'s parent and natural guardian, Ms. Proctor, is extremely careful about the security of her children's information. She never knowingly transmits their sensitive data in unsafe ways and stores documents containing Private Information in secure, controlled locations.

39.     In seeking and receiving medical care for J.S., Plaintiffs reasonably relied on Children's National—and, by extension, Oracle—to protect J.S.'s Private Information using reasonable and industry-standard security safeguards.

40.     Oracle obtained, stored, and continues to maintain J.S.'s Private Information and had a continuing legal duty to protect that data from unauthorized access and disclosure.

41.     Because the Data Breach placed J.S.'s highly sensitive medical and identifying information directly into the hands of cybercriminals, J.S.'s Private Information has already been published—or will inevitably be published—on the dark web.

42.     J.S. and her family have already been forced to take numerous mitigation steps, including heightened account monitoring, fraud-prevention efforts, and protective measures they would not otherwise need to undertake.

43.     Following the Data Breach, J.S.'s family experienced a significant spike in scam calls, phishing attempts, and suspicious contacts, indicating misuse of her information.

44.     The family now lives with heightened anxiety, fear, and stress about what information was exposed, how it will be used, and the lifelong risks a minor faces when her Social Security number and medical information circulate among cybercriminals.

45.     J.S. suffered actual injury because the theft and exposure of her Private Information violates her rights to privacy.

46.     J.S. suffered diminution in the value of her Private Information—an intangible but legally recognized form of property Oracle was required to protect.

47.     J.S. faces imminent and looming risks of identity theft, fraud, medical identity misuse, and long-term financial harm, especially because minors' stolen identities are often used for years before detection.

48.    J.S. and her family will be forced to spend time and money for years to monitor and protect her identity as a direct consequence of Oracle's failures.

49.    J.S. has a continuing interest in ensuring that her Private Information—still stored and backed up on Oracle's systems—does not remain vulnerable to further unauthorized access.

### *Plaintiff J.P.'s Experiences*

50.    Plaintiff J.P. is a minor and a Data Breach victim. His sensitive PII and PHI were entrusted to Children's National and stored by Oracle in its EHR and data-hosting environments.

51.    Oracle obtained and maintained J.P.'s Private Information, making Oracle responsible for safeguarding it.

52.    As a result of Oracle's Data Breach, J.P.'s sensitive information was compromised and placed in the hands of cybercriminals.

53.    J.P.'s mother, Ms. Proctor, is diligent about protecting her children's information, never transmits it without necessity, and stores all documents containing their data securely.

54.    In seeking medical care, Plaintiffs reasonably believed Oracle would use industry-standard cybersecurity measures, follow its own policies, and comply with federal and state law to protect J.P.'s information.

55.    Oracle retained J.P.'s Private Information, creating an ongoing obligation to safeguard it.

56.    On information and belief, J.P.'s Private Information has already been published—or will imminently be published—on dark-web forums controlled by the CL0P ransomware group and other malicious actors.

57.    J.P. and his family have already had to invest substantial time and effort monitoring for fraud, misuse, and suspicious activity.

58.    J.P.'s family experienced a measurable increase in spam calls, scam messages, and phishing activity following the breach.

59.    J.P. and his family reasonably fear for his financial security, medical identity, and long-term privacy, knowing that stolen minor identities are especially vulnerable to prolonged misuse.

60.    J.P. suffered actual injuries, including the violation of his right to privacy and exposure of his sensitive identity and medical data.

61.    J.P. suffered diminution in the value of his Private Information—property Oracle was required to protect.

62.    J.P. faces ongoing and substantial risk of identity theft, financial fraud, medical identity misuse, and other harm for years to come, particularly because minors' identities can be used undetected over long windows of time.

63.    J.P. and his family will be required to monitor and safeguard his identity for years, incurring significant time and cost.

64.    J.P. has a present and continuing interest in ensuring Oracle properly protects the Private Information still in its possession.

### *Plaintiff T.S.'s Experiences*

65.    Plaintiff T.S. is a minor and a Data Breach victim. His highly sensitive PII and PHI were stored by Oracle as part of its role hosting Children's National's patient data.

66.    Oracle obtained, maintained, and controlled T.S.'s Private Information and was required to safeguard it.

67.    Oracle's Data Breach compromised T.S.'s Private Information, exposing it to cybercriminals.

68.    T.S.'s parent and natural guardian, Ms. Proctor, has always exercised extreme caution with her children's data, storing it securely and limiting disclosures to necessary medical providers.

69.    Plaintiffs reasonably relied on Oracle to follow its own stated privacy and security practices, as well as federal and state requirements governing the protection of patient PII and PHI.

70.    Oracle continues to store and back up T.S.'s Private Information, giving rise to ongoing obligations to protect it.

71.    On information and belief, T.S.'s Private Information has already been trafficked—or will imminently be trafficked—on dark-web marketplaces, where minors' information is especially valuable to identity thieves.

72.    T.S. and his family have already spent significant time monitoring accounts, securing records, and attempting to protect against identity misuse.

73.    They also experienced a sharp increase in fraudulent calls, scam attempts, and digital intrusion efforts after the breach.

74.    T.S.'s family reasonably fears the lifelong risks he now faces due to the exposure of his Social Security number and medical information—risks far beyond mere inconvenience.

75.    T.S. suffered actual injuries, including the invasion of his privacy and the exposure of sensitive medical and identifying information.

76.    T.S. suffered diminution in the value of his Private Information, which Oracle was legally and contractually obligated to safeguard.

77.    The Data Breach created a substantial and imminent risk of identity theft, financial fraud, and medical identity misuse—harms that are magnified when the victim is a minor.

78.    T.S. and his family will be required to spend substantial time, money, and effort protecting him from the ongoing impact of Oracle's failures.

79.    T.S. has a strong continuing interest in ensuring that the Private Information Oracle still retains is properly protected from future compromise.

### *Consumers Prioritize Data Security*

80.    In 2024, Cisco—a global technology and communications company—published its multi-year *Consumer Privacy Survey*, which highlights the central role data security plays in consumer decision-making."[8] Therein, Cisco reported the following:

    a.    Privacy has become a foundational requirement for consumer trust. Cisco reported that privacy has evolved "from relative obscurity to a customer requirement," with more than 75% of respondents stating they will not purchase from an organization they do not trust with their data.[9]

    b.    Data protection is now a prerequisite for commercial success. Ninety-four percent of organizations surveyed agreed that customers will not buy from companies that fail to protect data properly.[10]

    c.    Consumers overwhelmingly value data privacy, with 89% affirming that they "care about data privacy."[11]

---

[8] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, *https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf* (last visited March 19, 2025).
[9] *Id.*
[10] *Id.*
[11] *Id.*

d.      Consumers are not passive: 83% said they are "willing to spend time and money to protect data," and many expect to pay more for services that safeguard their information.[12]

e.      Data practices directly influence purchasing behavior: 51% of consumers reported switching providers because of a company's data policies or data-sharing practices.[13]

f.      Consistent with the above, 75% of consumers stated they will not purchase from organizations they do not trust with their data."[14]

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

81.     Because of Defendant's failure to prevent the Data Breach, Plaintiffs and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, uncompensated lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.      loss of the opportunity to control how their PII is used;

b.      diminution in value of their PII;

c.      compromise and continuing publication of their PII;

d.      out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e.      lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

---

[12] *Id.*
[13] *Id.*
[14] *Id.*

f.    delay in receipt of tax refund monies;

g.    unauthorized use of their stolen PII; and

h.    continued risk to their PII—which remains in Defendant's possession—and is thus as risk for future breaches so long as Defendant fails to take appropriate measures to protect the PII.

82.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

83.    The value of Plaintiffs and Class's PII on the black market is considerable. Stolen PII trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

84.    It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

85.    One way criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data— first the stolen PII, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

86.    The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiffs and the Class that is available on the internet.

87.    In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators

and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs and other Class Members' stolen PII is being misused, and that such misuse is traceable to the Data Breach.

88.    Defendant disclosed the PII of Plaintiffs and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened, disclosed, and exposed the PII of Plaintiffs and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts,

and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

89.    Oracle's failure to promptly and properly notify Plaintiffs and Class Members of the Data Breach exacerbates Plaintiffs and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

### Oracle Knew Or Should Have Known the Risk of a Data Breach

90.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

91.    In 2024, a record 3,158 data breaches occurred—exposing approximately 1,350,835,988 sensitive records (i.e., 211% increase year over year).[15]

92.    Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware

---

[15] *2024 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.

of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[16]

93.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

### Oracle Failed to Adhere to FTC Guidelines

94.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

95.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use. The FTC declared that, *inter alia*, businesses must:

  a.     protect the personal customer information that they keep;

  b.     properly dispose of personal information that is no longer needed;

  c.     encrypt information stored on computer networks;

  d.     understand their network's vulnerabilities; and

  e.     implement policies to correct security problems.[17]

---

[16] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[17] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

96. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

97. Furthermore, the FTC explains that companies must:

    a.    not maintain information longer than is needed to authorize a transaction;

    b.    limit access to sensitive data;

    c.    require complex passwords to be used on networks;

    d.    use industry-tested methods for security;

    e.    monitor for suspicious activity on the network; and

    f.    verify that third-party service providers use reasonable security measures.

98. The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

### *Oracle Failed to Follow Industry Standards*

99. Industry and regulatory authorities have long identified baseline cybersecurity practices that businesses like Oracle must implement to safeguard sensitive PII and PHI. These standards include, at minimum: comprehensive employee cybersecurity training; the use of strong and regularly updated passwords; multi-layered security measures such as firewalls, anti-virus, and anti-malware protections; encryption of data at rest and in transit; multi-factor authentication for all privileged accounts; routine system monitoring and timely patching; maintaining secure,

segregated backups; and strict access controls that limit which employees may view or handle sensitive data.

100.    Additional industry-standard practices required to secure sensitive PII and PHI include: deploying and regularly updating malware-detection and intrusion-prevention tools; monitoring and restricting network ports and protocols; securing web browsers and email systems against phishing and exploitation; properly configuring and maintaining network infrastructure such as firewalls, switches, and routers; protecting physical access points and on-site security systems; safeguarding all communication channels through encryption and monitoring; and providing continuous, role-specific training to staff on cybersecurity risks and response protocols.

101.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of one or more of the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

102.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## **CLASS ACTION ALLEGATIONS**

103.    Plaintiffs bring this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> **All individuals in the United States whose PII and/or PHI were accessed, acquired, compromised, or otherwise**

**exposed in the Oracle data-security incident announced in 2025 involving Oracle's EHR, cloud-hosting, or data-storage environments**.

104.    Excluded from the Class are Defendant, their agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

105.    Plaintiffs reserve the right to amend the class definition.

106.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

107.    **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control.

108.    **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the putative class consists of thousands of members—as it includes current and former patients of Children's National Hospital whose data Oracle stored.

109.    **Typicality.** Plaintiffs' claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and Defendant's complete failure to notify individuals of the Data Breach.

110.    **Adequacy**. Plaintiffs will fairly and adequately protect the proposed Class's common interests. Plaintiffs' interests do not conflict with Class Members' interests. And Plaintiffs have retained counsel—including lead counsel—that are experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

111. **Commonality and Predominance**. Plaintiffs' and the Class's claims raise common facts and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

  a. if Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII;

  b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

  c. if Defendant were negligent in maintaining, protecting, and securing PII;

  d. if Defendant breached contract promises to safeguard Plaintiffs and the Class's PII;

  e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

  f. if Defendant's Breach Notice was reasonable;

  g. if the Data Breach caused Plaintiffs and the Class injuries;

  h. what the proper damages measure is; and

  i. if Plaintiffs and the Class are entitled to damages, treble damages, and or injunctive relief.

112. **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would

be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## COUNT I
### NEGLIGENCE
#### (On Behalf of Plaintiffs and the Class)

113.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

114.    Plaintiffs and the Class (or their third-party agents) entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

115.    Defendant owed a duty of care to Plaintiffs and Class Members because it was plainly foreseeable that failing to implement and maintain reasonable, industry-standard data-security measures would result in the compromise of their PII and PHI. That precise and foreseeable danger materialized here when Oracle's inadequate security allowed cybercriminals to access and exfiltrate Plaintiffs' Private Information.

116.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and the Class could and would suffer if their PII were wrongfully disclosed.

117.    Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew

or should have known would suffer injury-in-fact from Defendant's inadequate security practices. Defendant actively sought and obtained Plaintiffs and Class Members' PII.

Defendant owed— to Plaintiffs and Class Members—at least the following duties:

a. to exercise reasonable care in collecting, storing, handling, and using the PII and PHI in its possession;

b. to implement and maintain industry-standard and legally required security measures sufficient to protect Private Information from data breaches, unauthorized access, exfiltration, and theft;

c. to promptly detect, identify, and halt any attempted or actual unauthorized access to its systems; and

d. to timely notify Plaintiffs and Class Members of any breach of the security, confidentiality, or integrity of their Private Information so they could take meaningful steps to protect themselves.

118. Thus, Defendant owed a duty to timely and accurately disclose the scope, nature, and occurrence of the Data Breach to Plaintiffs and Class Members. This duty was essential to allow Plaintiffs and Class Members to take appropriate measures to safeguard their PII, remain vigilant against the heightened risk of harm, and undertake other necessary steps to mitigate the consequences of the Data Breach.

119. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII that it no longer required under applicable regulations.

120. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiffs and the Class involved an

unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

121.    Defendant's duty to use reasonable security measures arose from the special relationship between Defendant and Plaintiffs and the Class. That relationship existed because Plaintiffs and the Class (or their authorized agents) entrusted Defendant with their confidential PII as a necessary part of receiving services.

122.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII — whether by malware or otherwise.

123.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiffs and Class Members' and the importance of exercising reasonable care in handling it.

124.    Defendant improperly and inadequately safeguarded the PII of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

125.    Defendant breached these duties as evidenced by the Data Breach.

126.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' PII by:

        a.    disclosing and providing access to this information to third parties and

        b.    failing to properly supervise the way the PII was stored, used, and exchanged.

c. Defendant breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiffs and Class Members which actually and proximately caused the Data Breach and Plaintiffs and Class Members' injury.

127. Defendant further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs and Class Members' injuries-in-fact.

128. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

129. And, on information and belief, Plaintiffs' PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

130. Defendant's breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and uncompensated lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT II
## NEGLIGENCE *PER SE*
### (On Behalf of Plaintiffs and the Class)

131.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

132.    Under the FTC Act, 15 U.S.C. § 45, Defendant has a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

133.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs and the Class Members' sensitive PII.

134.    Defendant breached its duty to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

135.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

136.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Class.

137.    But for Defendant's wrongful and negligent breach of their duties owed, Plaintiffs and Class Members would not have been injured.

138.    The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant failed to meet their duties and that their breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

139.    Defendant's various violations and failure to comply with applicable laws and regulations constitutes negligence *per se*.

140.    As a direct and proximate result of Defendant's negligence per se, Plaintiffs and Class Members have suffered—and will continue to suffer—numerous injuries.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(*IN THE ALTERNATIVE*)**
**(On Behalf of Plaintiffs and the Class)**

141.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

142.    Plaintiffs allege Count III in the alternative to Count I.

143.    Plaintiffs and Class Members either directly contracted with Defendant or Plaintiffs and Class Members were the third-party beneficiaries of contracts with Defendant.

144.    Plaintiffs and Class Members—minor patients and their parents or guardians—were required to provide their PII to Defendant as a condition of receiving medical care at Children's. Plaintiffs and Class Members (or their authorized representatives) provided this PII to Defendant, or to Defendant's agents, in exchange for that medical care.

145.    Plaintiffs and Class Members—minor patients and their parents or guardians—entered into implied contracts with Defendant whereby they provided their PII to Defendant, or to Defendant's agents, as a necessary condition of receiving medical care.

146.    Plaintiffs and Class Members reasonably understood that Defendant would implement adequate cybersecurity measures to protect the highly sensitive PII they were required to provide in connection with receiving medical services.

147.    Plaintiffs and Class Members reasonably understood that Defendant would safeguard their PII based on representations made in Defendant's policies, procedures, and obligations under federal and state law governing the handling of medical and personal information.

148.    Plaintiffs and Class Members accepted Defendant's implied offers by providing their PII to Defendant or its agents as a condition of accessing medical services.

149.    In turn, Defendant agreed—explicitly through its policies and implicitly through its role as custodian of medical and personal data—to protect the PII from unauthorized access or disclosure.

150.    In its Privacy Policy and related notices, Defendant represented that it had a legal and contractual obligation to protect Plaintiffs' and Class Members' PII.

151.    Implicit in the parties' agreement was that Defendant would provide prompt and adequate notice of any unauthorized access, use, or disclosure of Plaintiffs' and Class Members' PII.

152.    Plaintiffs and Class Members would not have entrusted their PII to Defendant had they known that Defendant would not adequately protect it.

153.    Plaintiffs and Class Members fully performed their obligations under the implied contracts by providing accurate PII necessary for medical care.

154.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to their form.

155.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

156.    Defendant materially breached the contracts it entered with Plaintiffs and Class Members (or their third-party agents) by:

     a.     failing to safeguard their information;

     b.     failing to notify them promptly of the intrusion into their computer systems that compromised such information.

     c.     failing to comply with industry standards;

     d.     failing to comply with the legal obligations necessarily incorporated into the agreements; and

     e.     failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

157.    In these and other ways, Defendant violated their duty of good faith and fair dealing.

158.    Defendant material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries.

159.    Upon information and belief, Plaintiffs' PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

160.    Plaintiffs and Class Members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

### COUNT IV
### INVASION OF PRIVACY
#### (On Behalf of Plaintiffs and the Class)

161.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

162.    Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

163.    Defendant owed a duty to Plaintiffs and Class Members—minor patients and their guardians—to keep their highly sensitive and confidential PII secure and to prevent its disclosure to unauthorized third parties.

164.    The unauthorized acquisition—and outright theft—of Plaintiffs' and Class Members' PII by a third party is highly offensive to a reasonable person.

165.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

166.     The Data Breach constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

167.     Defendant acted with a knowing state of mind when it permitted the Data Breach because they knew their information security practices were inadequate.

168.     Defendant acted with a knowing state of mind when it failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

169.     Acting with knowledge, Defendant had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

170.     As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiffs and the Class was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages.

171.     Upon information and belief, Plaintiffs' PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

172.     Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their PII is still maintained by Defendant with their inadequate cybersecurity system and policies.

173.     Plaintiffs and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiffs and the Class.

174.    In addition to injunctive relief, Plaintiffs, on behalf of themselves and the other Class Members, seek compensatory damages for Defendant's invasion of privacy, including the value of the privacy interest Defendant violated, the cost of future credit and identity-theft monitoring, and all applicable prejudgment interest and costs.

### COUNT V
### UNJUST ENRICHMENT
### (*IN THE ALTERNATIVE*)
### (On Behalf of Plaintiffs and the Class)

175.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

176.    Plaintiffs allege Count V in the alternative to Count I.

177.    Plaintiffs and Class Members conferred a benefit upon Defendant by providing their highly valuable PII, which Defendant used in connection with its data-processing, storage, and technology services. Defendant derived substantial economic value from collecting, storing, and utilizing this information.

178.    Defendant appreciated or had knowledge of the benefits it received from Plaintiffs' and Class Members' PII.

179.    Plaintiffs and Class Members reasonably understood that Defendant would protect the PII they were required to provide in connection with receiving medical services.

180.    Defendant enriched itself by saving the costs they should have expended on data security measures to secure Plaintiffs' and Class Members' PII.

181.    Instead of investing in reasonable security measures that would have prevented the Data Breach, Defendant avoided necessary expenditures and increased its profits by implementing cheaper, deficient data-security practices. Plaintiffs and Class Members, in turn, suffered harm as a direct and proximate result of Defendant's failure to secure the PII entrusted to it.

182.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value derived from Plaintiffs' and Class Members' PII because Defendant failed to adequately safeguard that information.

183.    Plaintiffs and Class Members have no adequate remedy at law.

184.    Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiffs and Class Members—all unlawful or inequitable proceeds that it received because of their misconduct.

<u>COUNT VI</u>
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiffs and the Class)**

185.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

186.    Given the relationship between Defendant and Plaintiffs and Class Members— where Defendant assumed custody and control of their PII—Defendant undertook a fiduciary obligation to act primarily for their benefit: (1) to safeguard Plaintiffs' and Class Members' PII; (2) to timely notify them of any Data Breach or unauthorized disclosure; and (3) to maintain complete and accurate records of what information it stored and where it was stored.

187.    Defendant owed a fiduciary duty to act for the benefit of Plaintiffs and Class Members on matters within the scope of their relationship—most critically, to safeguard their PII.

188.    Because of the highly sensitive nature of the PII, Plaintiffs and Class Members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known the reality of Defendant's inadequate data security practices.

189.    Defendant breached their fiduciary duties to Plaintiffs and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiffs' and Class Members' PII.

190.    Defendant also breached their fiduciary duties to Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

191.    As a direct and proximate result of Defendant's breach of their fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries.

## PRAYER FOR RELIEF

Plaintiffs and Class Members respectfully request that the Court enter judgment in their favor and against Defendant, and further request that the Court order the following relief:

A.    Certify this action as a class action, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel;

B.    Award declaratory and equitable relief as necessary to protect the interests of Plaintiffs and the Class;

C.    Award appropriate injunctive relief, including measures requiring Defendant to implement and maintain industry-standard data-security practices sufficient to protect Plaintiffs' and Class Members' Private Information;

D.    Award damages to Plaintiffs and the Class—including compensatory, exemplary, punitive, and statutory damages—as permitted by law;

E.    Award restitution and disgorgement, in an amount to be determined at trial;

F.    Award reasonable attorneys' fees, costs, and litigation expenses, as permitted by law;

G.    Award pre-judgment and post-judgment interest, as provided by law;

H.    Grant leave to amend this Complaint as justice requires and to conform to the evidence; and

I.    Award such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims so triable.


Dated: November 26, 2025

/s/Bruce W. Steckler
Bruce W. Steckler (Bar No. 00785039)
**STECKLER WAYNE & LOVE PLLC**
12720 Hillcrest Road, Suite1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Bruce@stecklerlaw.com

Sabita J. Soneji (*Pro hac vice forthcoming*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
ssoneji@tzlegal.com

*Attorneys for Plaintiffs and the Proposed Class*